140 So.2d 906 (1962)
Succession of Frank Howard WASHINGTON.
No. 258.
Court of Appeal of Louisiana, Fourth Circuit.
May 7, 1962.
*907 Midlo & Lehmann, Rene Lehmann, New Orleans, for appellant.
James J. Morrison, Gloria N. Irvine, New Orleans, for appellee.
Before McBRIDE, REGAN and JOHNSON, JJ.
JOHNSON, Judge.
Frank Howard Washington and Estelle Clemons were married in Concordia Parish in 1935. They lived together in and around Ferriday, Louisiana, until they separated and Frank Washington started living with Viola Inez Melancon about 1941 or 1942. After a few years Frank and Viola moved to New Orleans and continued living together as husband and wife. Pretty soon Estelle Clemons moved to New Orleans but did not live in the same neighborhood where Viola and Frank lived. Frank was employed as a longshoreman. The testimony indicates that in 1948 or 1949 he and Viola Melancon started building a two room house on a vacant lot in New Orleans (presumably they were buying it by contract at that time), and on July 21, 1953, they executed a deed of purchase from P. M. Realty Company, Inc., by which the following described property was conveyed to Frank Howard Washington and Viola Inez Melancon Washington, who are described in that deed as married but once and then to each other, to-wit:
"A certain lot of ground, together with all the buildings and improvements thereon, and all the rights, ways, privileges, servitudes, and advantages thereunto belonging or in anywise appertaining, situated in the THIRD DISTRICT of the City of New Orleans, in SQUARE NO. 962, bounded by Benton, North Prieur, Gordon, and North Johnson Streets, designated as LOT NO. 1 on a survey made by Adloe Orr, Civil Engineer, dated December 20, 1946, according to which said Lot No. 1 forms the corner of Benton and North Prieur Streets and measures thirty feet, ten inches (30' 10") front on Benton Street, the same width in the rear, by a depth between equal and parallel lines and front on North Prieur *908 Street of one hundred eleven feet, four inches, two lines (111' 4" 2"').
"All mineral rights reserved to the State of Louisiana.
"Being part of the same property acquired by the vendor herein as per act before H. L. Midlo, Notary Public, dated July 1, 1949, registered in C.O.B. 564 folio 289."
That act is in authentic form before H. L. Midlo, Notary Public, and it recites that the sale is made and accepted for the consideration of $400.00 paid in cash.
On April 9, 1958, Frank Howard Washington died intestate in the City of New Orleans. His succession was opened on July 10, 1958, with the joint petition of Estelle Clemons, widow, and Lulu Brown, mother of said decedent, respectively. Petitioners allege that there were no descendants and that petitioners are the sole heirs of decedent, his estate consisting of the real estate described above, of a value of $4,000.00 and $3,000.00 in life insurance, all belonging to the community existing between him and Estelle Clemons Washington. The widow asked to be recognized as the surviving spouse in community and as such the owner of an undivided one-half of all of the property, and entitled to the usufruct of the other one-half. The mother asked to be recognized as heir of her deceased son as owner "of the remaining one-quarter of decedent's estate" subject to the usufruct in favor of the widow. On the same day an ex parte judgment was rendered decreeing ownership and use of the property accordingly and in the same proportions as recited above. On September 3, 1958, Viola Inez Melancon filed her petition in the same probate proceeding, alleging that she is the owner of an undivided one-half interest in the real estate described above; that the judgment of July 10, 1958 is erroneous for the reason that decedent only owned an undivided one-half of said lot and improvements. This petition prays that the said judgment of July 10, 1958, be annulled and that Estelle Clemons Washington, the widow, and Lulu Brown, the mother, be recognized as the owners of said decedent's one-half interest in said property, and that she, Viola Inez Melancon, be recognized as the owner of the other one-half interest in said property. On March 9, 1959, Estelle Clemons, describing herself as widow of Frank Howard Washington, answered the petition of Viola Melancon, denying Viola's claim to ownership and alleging that at the time of the purchase of said property by Frank and Viola they were living together in a state of open concubinage; that no portion of the purchase price was paid by Viola; that all of the purchase price was paid by Frank Howard Washington, and that the acquisition of any portion of said property in the name of Viola Inez Melancon was a prohibited donation in disguise. Petitioner further prays that judgment be rendered decreeing that Viola Inez Melancon acquired and owns no interest in said property by the deed of July 21, 1953.
On the same day Estelle Clemons, as the widow of Frank Washington and as the natural tutrix of seven named minor children, filed a separate petition alleging that the judgment of July 10, 1958, was in error and should be corrected, and that during her marriage to said decedent the seven children were born. The petition gives their names and dates of birth from the birth of the first child on June 14, 1944, to the birth of the last child on November 17, 1956, and accepts the succession purely, simply and unconditionally. Petitioner further asserts that she is the owner of an undivided one-half of decedent's estate and that said children are the owners of the other one-half, subject to her usufruct, and that the act of sale to Frank Washington and Viola Melancon on July 21, 1953, is invalid and should be annulled. Petitioner prays that she be recognized as decedent's surviving spouse in community and as such the owner of one-half of his estate, that the said children be recognized as decedent's sole heirs at law and the owners *909 of an undivided one-seventh to each of the other one-half of said property, subject to the usufruct in petitioner, and that they be sent into possession of said property accordingly. Petitioner further prays that a rule nisi issue herein ordering said Viola Melancon to show cause why she should not be declared to have no interest in said property. The rule issued and was made returnable on March 13, 1959.
On February 1, 1960, Viola Inez Melancon filed an answer to that petition, generally denying the allegations of said petition, and further answering, she alleges that the said real estate was acquired jointly by her and said decedent for the price of $400.00, which was paid by numerous small installments of about $10.00 each during the period between February 1947 and October 1952; that the act of sale was passed on July 21, 1953; that while respondent and decedent were still making payments on account of the purchase price a small building was erected thereon with materials purchased with money belonging jointly to her and said decedent; that said house, plumbing and electric installations were paid for in installments with funds belonging jointly to them; that a room was added to the building by her father, Willie Melancon, with materials and labor provided by the said Willie Melancon; that although she was living with Frank Howard Washington as husband and wife, they were not living in open concubinage, but rather they were living in closed or secret concubinage, she being considered in the community as the lawful wife of said decedent. Her petition prays that the suit by Estelle Clemons Washington be dismissed and that she, Viola Melancon, be recognized as the owner of an undivided one-half interest in said property and that judgment be rendered accordingly.
The rule nisi was tried on February 1, 1960, and by stipulation the matter was also tried on the following pleadings: The petition of Viola Inez Melancon filed September 3, 1958; the answer of Estelle Clemons Washington, appearing individually and on behalf of her seven minor children; and on the answer of Viola Inez Melancon filed February 1, 1960. (The stipulation referred to above includes reference to a petition of Viola Inez Melancon on behalf of her five illegitimate minor children born to her and Frank Washington, but we find no such petition in the record).
The trial Court rendered judgment on February 1 and signed it on February 5, 1960, decreeing: 1. That the judgment rendered on July 10, 1958, be cancelled and annulled; 2. That Estelle Clemons individually be recognized as the surviving widow in community of decedent and as owner of an undivided one-half of the property first described above and entitled to the usufruct of the other one-half, and that the seven minor children, born to Estelle Clemons Washington, be recognized as heirs of decedent and sent into possession of the other one-half interest in said property, subject to said usufruct; 3. That the petition of Viola Inez Melancon, filed September 3, 1958, be dismissed with costs; 4. That said rule nisi be made absolute and that the sale of July 21, 1953, be annulled as constituting a prohibited donation; and 5. That the petition of Viola Melancon to have the five illegitimate minor children born to her and Frank Washington be recognized as the illegitimate children of decedent and that the answer of Estelle Clemons Washington to said petition be continued under advisement.
Viola Inez Melancon has appealed suspensively from said judgment.
On the day of the trial counsel for Viola Inez Melancon offered in evidence the act of sale of July 21, 1953, recorded in conveyance book 588, folio 353, being the conveyance of the property to Frank Howard Washington and Viola Inez Melancon. The objection to this offering by counsel for Estelle Clemons, the widow, was overruled and the offering was admitted subject to the objection. With that offering, counsel for Viola Inez Melancon rested.
*910 Counsel for Estelle Clemons, the widow, caller her as a witness and she testified that her husband was the same Frank Howard Washington who had been living with Viola Inez Melancon; that she had been separated from him since he started living with Viola Melancon, but was never divorced from him. She said the birth of the seven children named in her pleading were registered in the name of Washington with Frank Howard Washington given in the certificates as the father; that her said husband knew about the birth of each child; that he went with her and helped her to register the children in his name.
Counsel for Estelle Clemons argues that in view of the fact that Viola Melancon and said decedent were living in a state of concubinage it was illegal to include the concubine's name as a purchaser of the real estate to which they took title jointly on July 21, 1953, for the recited consideration of $400.00 cash, for the reason that such a transaction amounts to a donation by Frank Washington of real estate in violation of Article 1481 of the LSA-Civil Code. That Article reads as follows:
"Those who have lived together in open concubinage are respectively incapable of making to each other, whether inter vivos or mortis causa, any donation of immovables; and if they make a donation of movables, it can not exceed one-tenth part of the whole value of their estate.
"Those who afterwards marry are excepted from this rule."
That Article would apply only if the parties were living together in open concubinage as distinct from a closed or secret state. What constitutes each type of concubinage is discussed and the types defined in a number of decisions in this state. A few of them are: Succession of Jahraus, 114 La. 456, 38 So. 417; Succession of Lannes, 187 La. 17, 174 So. 94; Patin v. T. L. James & Co., 218 La. 949, 51 So.2d 586; Heatwole v. Stanbury, 212 La. 685, 33 So. 2d 196; Manning v. Harrell, La.App., 59 So.2d 389.
The evidence on that subject in this case is very meager and falls far short of that which would be necessary to prove the existence of a closed or secret relationship. Of course, everybody who knew the parties at all, knew full well that they were living together, but that is not the test. If the general public, their friends, neighbors, trades people and fellow church members, if any, believed they were lawfully married to each other and the parties promoted that belief by guarding closely the secret that they were not married to each other and by presenting each other as husband or wife, respectively, they would not be classed as living in open concubinage. These parties did make some effort toward that end, but the evidence offered to prove that their friends and the public generally believed them to be married to each other is not convincing. Viola testified that some folks believed they were married, some folks didn't know, and that she was always honored as Frank's wife. On the other hand, she said that when they lived in Ferriday, before moving to New Orleans, most people who knew her also knew Estelle Clemons and that they knew Estelle and Frank were married, but they didn't know if they were divorced. Roy Singleton and Henry Leslie testified they have known Viola and Frank since they had been living in New Orleans and that some people thought they were married and some people knew they were not married. Viola's brother and father when asked if the people generally knew that Viola was not the lawful wife of Frank Washington said "some know and some don't know."
The trial Court found and held that these parties were living in open concubinage and we can not say that there is error in the ruling. In fact, we agree with it entirely.
That brings us to a determination of what, if anything, Viola Melancon acquired *911 by the deed of July 21, 1953. Her counsel suggests that perhaps Frank Washington gave Viola the money with which she purchased an interest in the land and if it be determined that she has no interest in the land, then she at least had a part in the purchase or erection of the improvements on the land. The suggestion that Viola was given money with which to purchase an interest in the land to defeat the classification of it as a donation is untenable, for the very simple reason that the acquisition of an immovable through an interposed third person is none-the-less invalid nor any the less open to attack than when made by a person to another not legally qualified to receive it as a direct gift. Succession of Deubler, 139 La. 551, 71 So. 846.
In this case when counsel for the concubine offered and filed in evidence the deed of January 21, 1953, there arose a presumption that Viola Melancon acquired an undivided half interest in the land therein described. The portion of each party was not specified and there being two purchasers the presumption is that their interest is equal. But that presumption is rebuttable and oral evidence is admissible to prove what portion of the $400.00 was paid by each purchaser and the manner in which and when it was paid. Manning v. Harrell, La.App., 59 So.2d 389 and authorities therein cited; Oxford v. Barrow, 43 La.Ann. 863, 9 So. 479.
On that subject the trial Court permitted counsel for Estelle Clemons to question Viola Melancon concerning her financial affairs, what money she had, if any, when the deed was passed, her employment and earnings, but when in rebuttal counsel for Viola Melancon endeavored to elicit testimony as to when and how the purchase price was paid in support of her allegations that they paid for the land in small installments over a period of several years before the date of the deed, the Court sustained opposing counsel's objection to that testimony. That ruling was erroneous and makes it necessary to remand this case to enable Viola Melancon to have full opportunity to prove how and when and how much of the consideration, if any, she paid and the status of any money she may have used for that purpose. The evidence as it stands in this record is not sufficient to rebut the presumption that Viola Melancon paid one-half the purchase price. There is no evidence whatsoever that Frank Washington paid it all or any part of it. The burden of overcoming the rebuttable presumption in favor of Viola Melancon is on the one attacking the validity of the transaction. (Counsel for Estelle Clemons contends in his brief that counsel for Viola Melancon admitted in the trial of the case in open Court that he could not prove that Viola paid any part of the money. This Court's interpretation of that statement made by said counsel is that the statement was not in the nature of an acknowledgment, but that he meant that the trial Court would not permit him to offer evidence of such proof.) Pack v. Chapman, 16 La.Ann. 366; Smith v. Southern Kraft Corporation et al., 202 La. 1019, 13 So.2d 335; Succession of Manning, 150 La. 1008, 91 So. 435; LSA-Civil Code, Art. 2287.
For these reasons the judgment dated February 1, 1960, and signed on February 5, 1960, appealed from be and it is affirmed insofar as that judgment cancelled and annulled the judgment of that Court dated July 10, 1958, and in all other respects the said judgment appealed from is reversed and the case is hereby remanded to the Civil District Court for the Parish of Orleans for further proceedings and determination not inconsistent with the views hereinabove expressed.
Estelle Clemons Washington is to pay the cost of this appeal. All other costs are to be assessed by the trial Court according to law.
Affirmed in part; reversed in part and remanded.