JASPER E. JONES, Judge.
This is a suit to return the ownership of several parcels of immovable property to the estate of Milton Hullaby. The plaintiff-appellant is the administratrix of the decedent’s succession. The defendants-appel-lees are Phoebe Henson Mosley and Virginia Cobb, recipients of title to the immovable property. William P. Cobb, husband of Virginia Cobb, was also made a defendant.
We affirm.
FACTS
On September 15, 1972, Milton Hullaby and his wife, Gracie, were awarded a judicial separation. He remained at his home in Ringgold, Louisiana, and Gracie moved *876 with their children to California. Soon after the separation Milton Hullaby began living with Phoebe Henson Mosley.
At the time the couple began living together Milton Hullaby owned a service station and purchased his gasoline from the defendants, Virginia and William Cobb. Milton Hullaby also had a job as a bus driver for the Bienville Parish School Board and Phoebe Mosley helped him run the service station. Milton purchased gasoline on credit from Virginia and William Cobb. Phoebe shared with Milton the management of his business affairs and was authorized to sign checks from his commercial account at his bank. She also used this account to pay her personal bills as she and Milton split the household living expenses. The commercial account was the only bank account they had. The couple closed the service station in 1979 because Milton was in debt to the Cobbs, the gasoline distributor, for a large sum of money for unpaid gasoline bills. Milton continued to purchase gas from the Cobbs for the operation of his school bus. Milton then began paying the Cobbs monthly for an unspecified time in order to reduce the amount of this debt. The Cobbs had never taken formal action on the debt as Milton was an old family friend who had taken care of William Cobb’s parents and who needed his income to pay medical bills.
On November 7, 1979, shortly after the service station had been abandoned, Milton purchased Lot 10 of Block 4 of the O.G. Thomas Addition in his name as Phoebe “wanted a place of her own.” This parcel contained two single family residences and the stated consideration was $20,000. On that same day he executed at his bank a collateral mortgage note for $50,000 in favor of “any future holder.” The purchase price was to be paid out in five years and the monthly note was approximately $700. Of this amount Phoebe paid Milton approximately $300 per month from her $780 per month job as a school bus driver and from funds in the amount of $550 supplied monthly since shortly after the couple began living together by her three sons who were in the U.S. Army. Credit life insurance was taken out to pay off the obligation in the event of his death.
In the early part of 1981 Milton Hullaby was diagnosed as having cancer. His health was failing and he was in and out of the hospital on several occasions. On October 15, 1981, while at home, Milton transferred Lot 10 to Phoebe in the form of an Assumption Deed. Sometime in October, after this transaction, Milton was admitted to the hospital for the final time.
On November 5, 1981, while in the hospital, Milton gave a Power of Attorney to Phoebe as “he didn’t feel that he was going to make it home.” On November 6, 1981, Phoebe, acting on Milton’s instructions, transferred by Cash Deed approximately 22 acres he owned in Bienville Parish to Virginia Cobb for a stated consideration of $20,000 to pay off the gasoline debt of $17,827.85. The Cobbs formally accepted the exchange at that time. On November 7, 1981, Milton Hullaby died of cancer. The obligation owed on the property conveyed to Phoebe was paid by a credit life insurance company and Phoebe never had to make a payment on Lot 10.
Suit was filed after the decedent’s succession was opened to nullify the transfers of property and bring these assets back into the estate. The trial court held Milton Hullaby was in sound mind and there was “consideration” for both transfers and rejected plaintiff’s demand to invalidate the Mosley and Cobb deeds.
The plaintiff appeals. The plaintiff’s two assignments of error present the following issues for decision:
(1) Is the transfer to Phoebe Mosley null as it is actually a Donation Mortis Causa to a concubine in violation of LSA-C.C. art. 1481?
(2) Is the transfer to Virginia and William Cobb null as they admit the $20,000 stated consideration was never paid?
Issue #1 — Is the transfer an invalid donation?
LAW ON DONATIONS AND CONTRACTS BETWEEN PERSONS LIVING IN OPEN CONCUBINAGE
A donation mortis causa (in prospect of death) is an act to take effect, when the *877 donor shall no longer exist, by which he disposes of the whole or a part of his property, and which is revocable. LSA-C.C. art. 1469. A donation inter vivos (between living persons) is an act by which the donor divests himself, at present and irrevocably, of the thing given. LSA-C.C. art. 1468. Those who have lived together in open concubinage are respectively incapable of making to each other, whether inter vivos or mortis causea, any donation of immovables. LSA-C.C. art. 1481. Every disposition in favor of a person incapable of receiving, shall be null, whether it be disguised under the form of an onerous contract. LSA-C.C. art. 1491.
A contract is onerous when each party obtains an advantage in exchange for his obligation. LSA-C.C. art. 1774 (now art. 1909). Parties are free to contract for any object that is lawful. LSA-C.C. arts. 1884-1886,1891 (now art. 1971). Contracts have the effect of law for the parties and may be dissolved only through the consent of the parties or on grounds provided by law. LSA-C.C. art. 1901 (now art. 1983). A lifestyle of open concubinage, in and of itself, does not amount to an incapacity which prohibits transfers of immovable property between the parties where the concubine is a named vendee and where the anticipated acquisition payments do not derive from the relationship. When the concubine is a named vendee, a rebuttable presumption arises that the acquisition payments did not derive from the illicit relationship. Succession of Washington, 140 So.2d 906 (La.App. 4th Cir.1962); Chambers v. Crawford, 150 So.2d 61 (La.App. 2d Cir.1963).

Should the property transaction be nullified?

The appellant argues that Milton Hullaby knew when he transferred the property that he was soon going to die and that the credit life insurance policy would pay off the indebtedness on the property at his demise. As such, the Assumption Deed to Phoebe is asserted to be a disguised transfer to circumvent the prohibitions on donations of immovable property between individuals who had lived in open concubinage together.
The record shows that Milton Hullaby first manifested a premonition of his imminent death to Phoebe on November 5, 1981, when he requested the Power of Attorney to be drawn up. He first mentioned such a premonition to William Cobb two to three days before he was placed in the hospital in October of 1981 for the final time prior to his death. Phoebe had been paying $300 per month to Milton out of her own resources on the debt on the house and she was the named vendee on the Assumption Deed. She also testified Milton had always intended to transfer title to her as the property was originally purchased so she could have “a house of her own.” Phoebe Mosley testified she and Milton had lived together for approximately nine years in Ringgold, Louisiana. Virginia Cobb testified that she had been aware of their lifestyle since the beginning. Amos Taylor testified he had known Milton practically all of his life and referred to Phoebe Mosley as Milton’s “wife.” He also related that he was aware that Phoebe and Milton had been living together for “quite sometime.” The trial court determined that it was not proven that Milton Hullaby knew his death was imminent when he transferred Lot 10 to Phoebe.
We conclude that the Assumption Deed is supported by serious consideration and it is a valid contract and not a disguised onerous transfer nor an invalid donation inter vivos or mortis causa. Milton and Phoebe cohabitated and shared living expenses for almost nine years. Their combined efforts at running the service station, their joint financial efforts in purchasing real estate, the use of a single commercial account for the couple’s business and personal needs, and the lack of any evidence that they attempted to disguise or hide the fact that they were not married clearly depicts a relationship where they lived together openly as man and wife. All of these circumstances establish that Milton and Phoebe lived in open concubinage. See generally, Thomas v. Thomas, 440 So.2d 879 (La.App. 2d Cir. *878 1983), writ den., 443 So.2d 597 (La.1983). However, this status alone is not enough to invalidate the transfer as Phoebe was the named vendee. Succession of Washington, supra; Chambers v. Crawford, supra. The record does not rebut the presumption that the assumed monthly obligation on the note would have been paid out of her separate resources which were derived independently of the illicit relationship. Rather, the record establishes that Phoebe’s occupation as a school bus driver and the monthly subsidy she received in allotments from her sons in the armed services equate to approximately $1,250 per month. This sum is reasonably large enough to pay the $700 monthly note, should that have been necessary.
The Assumption Deed provides that Phoebe assumed the balance due on a $50,-000, any future holder, mortgage signed by Milton Hullaby dated November 7, 1979, and a $2,000, any future holder, mortgage signed by Milton Hillaby dated July 16, 1981. The unpaid balances on the notes secured by these mortgages are not set forth in the deed nor does the record specifically reflect them. The evidence establishes that the purchase price of $20,000, with the finance charges added, was to be liquidated by the payment of $700 per month for five years. These payments had been made for twenty-three months at the time of the Assumption Deed. These facts reflect that the obligations assumed by Phoebe would require that she pay $700 per month for thirty-seven months or a total sum of $25,900, plus whatever amount was owed on the July, 1981, mortgage, which is adequate consideration for the property purchased by her.
There is a lack of any clear evidence that Milton’s primary motivation underlying the transfer was his imminent demise and the availability of the credit life proceeds. The transfer was completed on October 15, 1981, at a time he was not in the hospital and while he was at his home. The first indication of record that Milton perceived his condition as terminal was two or three days before he was admitted to the hospital in October of 1981. The exact date of this final admission is not given in the record. The only other evidence of this state of mind was his revelation to Phoebe that he did not think he was going to make it home when he requested the Power of Attorney to be drawn up on November 5, 1981. The deed itself contained no condition delaying the transfer of title until after his death and there is no evidence that Milton retained the deed or manifested any other conduct showing an intent not to immediately transfer ownership of the property to Phoebe. Cf., Taylor v. Spencer, 225 So.2d 98 (La.App. 2d Cir.1969). Milton’s relief as primary obligor on the mortgage debts assumed by Phoebe provided consideration for the sale and the trial court was not clearly wrong in determining that the Assumption Deed was valid.
Issue #2 — Should the transfer to Virginia Cobb be rescinded?
The appellant’s primary argument is that as Virginia Cobb admitted the $20,000 stated consideration in the cash deed was never actually paid, then LSA-C.C. art. 2276 prohibits parol evidence from being admitted to establish the true consideration for the contract and the trial court was in error in allowing Virginia Cobb to testify that the true consideration was cancellation of the debt.[1] The appellant also asserts the following arguments:
(a) That the existence of a valid debt to serve as consideration for the Cobb deed was not proven as LSA-C.C. art. 2248 mandates that the checks, ledger sheets and other documentation admitted into evidence on behalf of the defendant cannot be given in favor of the person who prepared them;[2]
*879 (b) That most of the debt is prescribed and any part of the debt not prescribed is insufficient to support a non-lesionary transfer.[3]
We conclude all of these arguments are without merit.
 Appellant’s argument that parol evidence should not have been admitted to show the true consideration for the deed has no merit. A well established exception to the parol evidence rule of LSA-C.C. art. 2276 provides that parol evidence is admissible to show the true consideration for a sale. This proves the intent of the parties and is not considered as a contradiction of the deed. Love v. Dedon, 239 La. 109, 118 So.2d 122 (1960); Bash v. Sims, 210 So.2d 180 (La.App. 2d Cir.1968); Victorian v. Victorian, 411 So.2d 473 (La.App. 3d Cir.1982). Although the parties denominated the contract as a cash deed it is well settled that courts are bound to give legal effect according to the true intent of the parties. Pendleton v. Shell Oil Co., 408 So.2d 1341 (La.1982); LSA-C.C. art. 1945 (now arts. 2045-2057). It is clear the parties intended a dation en paiement and that the gasoline bill was fully satisfied by the transfer in ownership of the immovable property. LSA-C.C. arts. 2655.[4] The evidence establishes that the charge tickets, unpaid checks and other documentation of the debt was delivered by the Cobbs to Phoebe Mosley on November 6, 1981, at the time the deed was signed by her and by Mr. and Mrs. Cobb.
There is no merit to the appellant’s argument that the checks, ledgers and other documentation offered by Virginia Cobb were improperly admitted into evidence as the record shows counsel made no objection to the offering.
The accumulation of the Cobb gasoline bill commenced on January 6, 1977, and contained charges through July 7, 1981. The appellant contends that under the provisions of LSA-C.C. art. 3538, (see Footnote # 3), most of the gasoline bill has prescribed by the elapse of three years and the amount of same which remains unpres-cribed is so small that the sale should be set aside on the grounds of lesion. Virginia Cobb contends that the decedent had made substantial payments on the gasoline bill over the years and the payments interrupted prescription and that the total amount of the debt was fully enforceable at the time the deed was passed.
The evidence as to the dates and amount of payments by the decedent on the bill contained in the record is very sparse. However, we find it unnecessary to consider the full import of this prescription argument by the plaintiff, nor the interruption of prescription argument by the Cobbs, because the plaintiff has failed to establish lesion.
The records of the gasoline debt reflect there were over $6,000 of the debt created within three years of the sale and for this reason was clearly not prescribed. The cancellation of this amount of debt provides serious consideration for the conveyance of the land to Virginia Cobb. In an action for lesion the plaintiff has the burden to prove by clear and convincing evidence that the price given was less than one-half the market value of the thing sold at the time of the sale. Mullins v. Page, 457 So.2d 64 (La.App. 2d Cir.1981), writ den., 459 So.2d 538 (La.1984); LSA-C.C. arts. 2589, 2590.[5] The only indication of *880 the value of the property conveyed was the recitation of the $20,000 consideration in the deed, which amount the evidence shows was used because that sum approached the total amount of the debt, plus an allowance for interest. There was no evidence from the parties to the deed that the fair market value of the property was $20,000 at the time of the transfer. Plaintiff offered no evidence of the market value of the property and therefore failed to establish that the consideration received being the cancellation of an unprescribed debt in an amount in excess of $6,000 was less than one-half the value of the land given in payment of the debt.
CONCLUSION
The judgment is AFFIRMED. All costs of this appeal are assessed against the appellant.

. Art. 2276. Parol evidence relative to written instruments
Art. 2276. Neither shall parol evidence be admitted against or beyond what is contained in the acts, nor on what may have been said before, or at the time of making them, or since.

. Art. 2248. Books of merchants as evidence
Art. 2248. The books of merchants can not be given in evidence in their favor; they are good evidence against them, but if used as evidence, the whole must be taken together.

.Art. 3538. Actions prescribed by three years; discontinuance of prescription
Art. 3538. The following actions are prescribed by three years:
[[Image here]]
That on the accounts of merchants, whether selling for wholesale or retail.
[[Image here]]
This prescription only ceases from the time there has been an account acknowledged in writing, a note or bond given, or an action commenced.
Now see LSA-C.C. art. 3994(4)

. Art. 2655. Giving in payment, definition
The giving in payment is an act by which a debtor gives a thing to the creditor, who is willing to receive it, in payment of a sum which is due.

. Art. 2589. Rescission for lesion beyond moiety
If the vendor has been aggrieved for more than half the value of an immovable estate by him sold, he has the right to demand the re *880 scission of the sale, even in case he had expressly abandoned the right of claiming such rescission, and declared that he gave to the purchaser the surplus of the thing’s value.
Art. 2590. Time of valuation for determination of lesion
To ascertain whether there is a lesion beyond moiety, the immovable must be estimated according to the state in which it was, and the value which it had at the time of the sale, or at the time the option was granted if the sale be made pursuant to a valid contract of option.