142 So.2d 481 (1962)
Succession of Jerry W. DAVIS.
No. 9730.
Court of Appeal of Louisiana, Second Circuit.
June 14, 1962.
Rehearing Denied July 5, 1962.
Louis Lyons, Bossier City, for plaintiff-appellant.
Steven N. Cowel, Shreveport, for defendant-appellant.
Before HARDY, GLADNEY, and AYRES, JJ.
GLADNEY, Judge.
Jerry W. Davis died intestate March 17, 1960, without issue and without father or *482 mother surviving him. Eliza Stephens Player, an aunt of decedent, filed an application to be appointed administratrix of the succession, the inventory of which showed an estate in the sum of $11,078.31. The application of Eliza Stephens Player was opposed by Jewel Lean Davis, who alleged that she was the surviving spouse of the decedent and entitled to the appointment as administratrix, but this appointment was opposed on the ground that the marriage was null and void forasmuch as Jewel Lean Davis had been married twice before the marriage to Jerry W. Davis, and had not been divorced; and further, that Jewel Lean Davis killed Jerry W. Davis. Following a trial of the oppositions, Eliza Stephens Player was appointed administratrix. The collateral relations of the deceased then petitioned the court to be recognized as the heirs of Jerry W. Davis, and to order Jewel Lean Davis to assert whatever rights she had in and to the succession. The latter thereupon responded to the rule by asserting that she was the lawful wife of the deceased, that all of the property of the estate was community property, and that as the lawful wife of the decedent she was entitled to be recognized as the owner thereof. Alternatively, she alleged that if it be determined that she was not the legal wife of the deceased, that in such event, it should be decreed that she was a putative wife, having married Jerry W. Davis in good faith, and thereby entitled to all the property. Again alternatively, she asserted that she was a partner of Jerry W. Davis and thereby entitled to one-half of any and all property left by the decedent, and further pleading in the alternative, she claims as a creditor of the succession.
The issues so presented were resolved by the trial court which held that Jewel Lean Davis was entitled to be recognized as an owner of a one-half interest in certain real estate and as a creditor of the estate of Jerry W. Davis in the sum of $70.00. Otherwise, the demands of Jewel Lean Davis were rejected. The judgment further recognized certain named collateral heirs as the sole and only heirs of Jerry W. Davis, deceased, and as such they were sent into possession of his property in the proportions shown. Following rendition of this judgment, applications were presented on both sides for rehearing and a re-opening of the case. The collateral heirs asserted the court erred in holding Jewel Lean Davis to be owner of an undivided one-half interest in certain real estate and Jewel Lean Davis, on the other hand, complained of the court's decision in rejecting her claim as the legal wife of the decedent, and alternatively as a putative wife and creditor of the succession. Upon denial of the application for rehearing or new trial, both parties appealed.
We turn our attention first to a consideration of the errors assigned by the collateral heirs. The judge a quo, generally speaking, rejected the claims of Jewel Lean Davis as a creditor of the estate as not being supported by any substantial proof. The trial court, however, did give consideration to the claim of Jewel Lean Davis to be recognized as a creditor in the amount of $105.00, and held that $70.00 of this was proven. Jewel Lean Davis contended the remainder of $35.00 was paid by her on notes due on the purchase price of certain property which consisted of a duplex residence, one side of which was occupied by her and the other side rented for $32.50 per month. The court held that her use of one of the apartments was worth as much or more than her claim for $2.50 per month, and, therefore, her demands for the excess were refused. We find this ruling free from error.
In charging error to the court's ruling that Jewel Lean Davis should be recognized as owner of an undivided one-half interest in the real estate, counsel for the heirs of Jerry W. Davis rely on the authority of Jackson et al. v. Hampton, La.App., 134 So.2d 114 (2d Cir. 1961). In the instant case the real estate in question consists of Lots 17 and 18 of Block "H" of the Mandel Addition of Caddo Parish, Louisiana, with improvements thereon and was purchased *483 in the name of Jerry W. Davis and Jewel Lean Davis. In Jackson v. Hampton this court considered the case on an exception of no right or cause of action, the resolution of which required that the allegations of plaintiffs' petition be accepted as true. The petition alleged, inter alia:
"Petitioners show that Lot `A', above described, was acquired by John Wright, Sr., * * * and that the purported vendees named in said deed were John Wright, Sr., and Louella Wright, husband and wife."
The petition also alleged that the property there involved was acquired by the deceased while living in open concubinage with the defendant who was named in deeds as wife of the deceased, and that the defendant paid no part of the consideration for the property. It was held that the petition stated a cause of action. In the instant case evidence was presented to show that Jewel Lean Davis did pay her share of the consideration, and, therefore, even though her marriage be null, she must be recognized as a purchaser to the extent of an undivided one-half interest in said property. The foregoing reasons appear to fully dispose of the contentions of the opponents to the claims of Jewel Lean Davis, and it is our holding that this issue was resolved correctly by the trial judge.
We turn now to a consideration of the demands of Jewel Lean Davis as asserted on this appeal, that she should be held to be the legal or putative wife of the deceased. It is disclosed by the record that Jewel Lean Davis was married on three occasions. Her first marriage was to Willie Arnold on October 18, 1942, and next she was married to Thomas White on April 9, 1947, and finally to Jerry W. Davis on May 29, 1949. All three of these marriages occurred in either Bossier or Caddo Parish. The record does not contain any evidence of termination of appellant's first two marriages, either by death or divorce. Jewel Lean Davis and Willie Arnold were married in Bossier Parish and after living together four or five months, they were separated and she returned to her mother's home. According to her testimony she considered her first marriage had been dissolved because of advices received from her first husband. Concerning her second marriage, she testified that her husband was married at the time he married her, and she gained this information from her husband's mother. In neither case did she receive any documentary proof of the dissolution of either marriage. Concerning these two marriages, she gave the following testimony:
"Q. How long did you live with Willie?
"A. I say about two or three months.
"Q. Two or three months?
"A. Yes, sir.
"Q. What happened to Willie?
"A. I don't know, sir.
"Q. You say after you lived with him three months what happened?
"A. I left and then went back to my mother's, and the last I heard he was leaving town going some place. I don't know where.
* * * * * *
"Q. When did you marry Thomas White?
"A. I believe it was 1947.
"Q. 1947. How long did you live with Thomas White?
"A. About two or three months.
"Q. Two or three months?
"A. Yes, sir.
"Q. Well, what happened to that marriage with Thomas White?
"A. Well, he was always drinking and so then he got in trouble where he was working at, at one of the bakery shops, and so they gave him so *484 much time to get out of town, so after then I don't know.
"Q. You don't know what happened to him?
"A. No, sir.
"Q. Have you ever visited his parents?
"A. Yes, sir.
"Q. Where do his parents live?
"A. They was living at Minden.
"Q. I see. How many times have you visited them?
"A. Well, I think I went about two or three times.
"Q. I see. Did you ever discuss anything about Thomas White'sWas there any discussion between you and Thomas White's mother * * * relative to the marital status of Thomas White?
* * * * * *
"A. She told me that he was not divorced from his wife.
"Q. Not divorced from his first wife?
"A. Yes, sir."
Jewel Lean Davis further testified that she was fifteen years of age at the time of her first marriage; that she met Willie Arnold, her first husband, in 1946 or 1947, (she testified the date of this meeting was 1946 on one occasion and 1947, on another), and he hold her he had obtained a divorce, but she did not know what the word "divorce" meant and never did know the meaning of the word until so advised by her attorney shortly before trial. Concerning her education, she testified she was promoted to the fourth grade.
In substance, Jewel Lean Davis predicates her claim to the status of a putative wife as of the time of her marriage to Jerry W. Davis on being in good faith for these reasons, that she did not know nor understand that it was necessary that a prior marriage be legally dissolved prior to contracting a legal second or third marriage; and that she assumed that her second marriage became non-existent because of the information from her mother-in-law that at the time of the marriage her husband was already married.
In rejecting the testimony of Jewel Lean Davis as insufficient to establish her good faith at the time of her marriage to Jerry W. Davis, the trial judge gave the following explanation of his decision on this issue:
"The parties to this controversy are colored people, but all of them are of above average intelligence, and Jewel Lean Davis appeared to us to be very intelligent, as evidenced by her method of testifying, and her appearance; and, although reared in the country, she moved from town to town and made a trip to California; she was very thrifty, and after she married Jerry W. Davis she supported him while he attended and graduated from Grambling College; and we are convinced that she was more familiar with the marriage laws of Louisiana than she admitted on the trial of this case."
The rights of Jewel Lean Davis turn upon a correct decision as to whether or not her marriage with Jerry W. Davis was contracted in good faith. The following articles of the LSA-Civil Code have a direct bearing upon the issue, which is a mixed question of fact and law:
"Art. 93. Impediment of an existing marriage
"Persons legally married are, until a dissolution of marriage, incapable of contracting another, under the penalties established by the laws of this State."
"Art. 117. Civil effects of putative marriage
*485 "The marriage, which has been declared null, produces nevertheless its civil effects as it relates to the parties and their children, if it has been contracted in good faith."
"Art. 118. Persons entitled to civil effects of putative marriage
"If only one of the parties acted in good faith, the marriage produces its civil effects only in his or her favor, and in favor of the children born of the marriage."
The good faith referred to in Article 117 has been construed to mean simply the honest and reasonable belief that the marriage at the time of its confection was a valid one. Smith v. Smith, 43 La. Ann. 1140, 10 So. 248 (1891); Succession of Marinoni, 183 La. 776, 164 So. 797 (1935); Succession of Chavis, 211 La. 313, 29 So.2d 860 (1947); Funderburk v. Funderburk, 214 La. 717, 38 So.2d 502 (1949). If there is any doubt as to the good faith of the parties to a second marriage, it is to be resolved in favor of good faith. Jones et al. v. Squire, 137 La. 883, 69 So. 733 (1915). What constitutes good faith is not an absolute quality but is relative and depends ultimately upon the facts and circumstances in each individual case. Succession of Primus, La.App., 131 So.2d 319 (1st Cir. 1961). In the Succession of Marinoni and in Jones v. Squire, the court observed that good faith may result from an error of law as well as from an error of fact. In Succession of Marinoni there appears the following quotations:
"`This good faith exists in thought, erroneous, but reasonable in the person, that the marriage has been validly contracted before the law.' Marcade, vol. 1, p. 522."
"`Good faith consists of being ignorant of the cause which prevents the formation of the marriage, or the defects in its celebration which cause its nullity.' First Planiol, Droit Civil, 3d Ed."
In Succession of Taylor, 39 La.Ann. 823, 2 So. 581-583 (1887), Justice Poche, as the organ of the court, said:
"If such trust can be placed in the declaration of the man who seeks to deceive a woman into a reprobated marriage, it would be different to conceive of a case in which the woman could not be held to have acted in good faith. Such a conclusion would open the flood-gates of legalized concubinage, and the courts, in their eagerness to protect the innocent offspring of null marriages, would thus lend a helping hand to the destruction of the respectability of society by sapping the only safe foundation of the purity of the family."
In a comparatively recent case decided by the Supreme Court, Lands et al. v. Equitable Life Assurance Society of the United States, 239 La. 782, 120 So.2d 74 (1960), the Supreme Court remanded the case for further evidence where it had been shown that the wife had abandoned her previous husband, the court holding that it was necessary to establish whether or not she entered into the second marriage in good faith in order to decide whether the burden of proof on validity of marriage lay with the wife or with brothers who were attacking the marriage. Justice Hawthorne, as organ of the court, observed:
"As we view the matter, however, for a party to a second marriage to be able to avail himself of the presumption of validity of such a marriage where it is shown that he has deserted his first spouse in another state, he must show that he entered into the second marriage in good faith."
In regard to the burden of proof in the matter of good or bad faith, counsel for Jewel Davis asserts that her good faith is presumed, and the burden of proving the contrary rests on the party who alleges it, in this case the administratrix of deceased, *486 and since no such proof was forthcoming, Jewel Lean Davis must be presumed to be the putative wife of Jerry Davis. The principle relied on has been stated with favor in an impressive number of Supreme Court decisions, for example, Succession of Navarro, 24 La.Ann. 298 (1872); Succession of Chavis, 211 La. 313, 29 So.2d 860 (1947); Succession of Fields, 222 La. 310, 62 So.2d 495 (1952); Succession of Pigg, 228 La. 799, 84 So.2d 196 (1955); and Prince v. Hopson, 230 La. 575, 89 So.2d 128 (1956), but each of these decisions involved the "innocent" party in a subsequent marriage, that is, the party who married while under no legal handicap, a situation not present in the instant case. But even if the administratrix did have the burden of proof to show bad faith on the part of Jewel Lean Davis, the records of her two prior marriages were introduced into evidence, and we feel it was then incumbent upon her, if she hoped to establish herself as the putative wife of deceased, to show her good faith at the time of her third marriage. This she failed to do.
Counsel for Jewel Lean Davis argues that uncontroverted testimony of his client establishes she was ignorant of the law which requires the dissolution of one marriage before another may be validly contracted; that she did not know that it was essential to obtain a divorce from a spouse to whom she was married before she should undertake another marriage; and that she assumed that because Thomas White was married to someone else at the time she was married to him, there was no requirement that this marriage be dissolved. As noted above, the trial court rejected such a finding, being of the opinion that Jewel Lean Davis was not as ignorant of the marriage laws of this state as he testified. A further fact which supports the ruling of the trial judge, so it seems to us, is that the three marriages of Jewel Lean Davis were contracted within a period of seven years, and all of them were performed in the immediate vicinity of Shreveport. The ultimate finding of the trial court was that Jewel Lean Davis was not truthful in her protestation of good faith, the court believing that she was not as ignorant as she pretended. With this ruling we find ourselves in complete accord. We find it difficult to believe that appellant was other than a rather intelligent young colored woman, as pictured by the trial court. It is, therefore, our finding that Jewel Lean Davis was not in good faith at the time of her marriage to Jerry W. Davis, and, therefore, she cannot claim the civil effects which inure to the benefit of a putative wife.
A further contention made by Jewel Lean Davis is that if she be not found to be a legal or a putative wife, then she must be considered as a partner. The record entirely refutes any such partnership status. A partnership constitutes a contract and must be created by the consent of the parties. LSA-C.C. Arts. 2801 and 2805. The appellant testified that she did not have such requisite agreement with the deceased. The demands, therefore, that appellant be considered as a partner in the several ventures of Jerry W. Davis and in his estate, must be rejected.
Accordingly, it is our finding that the judgment from which appealed should be affirmed. IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of the said Jewel Lean Davis, and against all other parties to this proceeding, decreeing that the said Jewel Lean Davis is the owner, in her own right, of an undivided one-half (½) interest in and to the following described property:
"Lots 17 and 18, Block H, of the Mandel Addition of Caddo Parish, Louisiana, as per map of said Subdivision, recorded in Conveyance Book 150, Page 52, of the records of Caddo Parish, Louisiana, and all improvements thereon."
*487 IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Jerry W. Davis was, at the time of his death, the owner of an undivided one-half (½) interest in and to said above-described property, and that same is an asset of his succession.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the following named persons be and they are hereby recognized as the sole heirs at law of Jerry W. Davis, deceased, in the proportions set opposite their names:

Beatrice Johnson 1/220th
Atrice B. McQuarter 1/220th
Abe Federick 1/220th
Lewis Federick 1/220th
A. D. Federick 1/220th
Ninia Mae Federick 1/220th
Addie Bell Saberry 1/220th
Thorner Federick 1/220th
Annie Mae Cole 1/220th
Mary Jane Moore 1/220th
Andrew Federick 1/220th
Columbus Hudson 1/60th
Mollie Thomas 1/60th
Willie Gray Marina 1/60th
Edward Stephens 1/120th
L. C. Stephens 1/120th
Lottie Stephens Gates 1/120th
Alberta Stephens Gates 1/120th
Clifford Stephens 1/120th
Robert Stephens 1/120th
Ike Stephens 1/20th
Hardy Stephens 1/20th
Calvin Stephens 1/20th
Minerva Stephens 1/20th
Janie Stephens Brazile 1/20th
Eliza Stephens Player 1/20th
Ernest Stephens 1/20th
Jerry Davis 1/8th
Roberta Davis 1/8th
Pearley Davis 1/8th
Annie Davis White 1/8th

and said persons, after further appropriate proceedings herein in the administration of this Succession and for the fixing of inheritance tax due herein, if any, shall be entitled to judgment placing them in possession of this Succession in said proportions.
Costs hereof are ordered paid by the Succession.