534 So.2d 103 (1988)
Clytie D. LeDOUX, Plaintiff-Appellant,
v.
Wilbert LeDOUX, et al., Defendants-Appellees.
No. 87-872.
Court of Appeal of Louisiana, Third Circuit.
November 9, 1988.
*104 Nathan A. Cormie, Lake Charles, plaintiff-appellant.
Richard Lee Tharp, Sulphur, defendantsappellees.
Before FORET, DOUCET and YELVERTON, JJ.
YELVERTON, Judge.
Clytie Mae Daly and Wilbert LeDoux lived together in the unmarried state for two years before their marriage in 1973. At the beginning of this relationship, in 1971, they bought Lot 4 of Block "A" of Sherwood Forest, a subdivision in Calcasieu Parish, putting it in another person's name to get it beyond the feared reach of Wilbert's estranged wife, because Wilbert was then still married. Of the $2,400 price for this lot, Clytie paid $1,300 with money borrowed from her son. After their marriage and subsequent divorce, a partition suit in 1983 put at issue the ownership of the lot, Clytie claiming she was a joint owner and Wilbert claiming he was the sole owner. At the time of the trial the lot still stood in the name of the third person.
The trial judge ruled that Wilbert was the sole owner of the property, but that Clytie, having paid $1,300 toward the purchase price from her own funds obtained outside the illicit relationship, was entitled to recover $1300 with interest from judicial demand.
Clytie has appealed urging that the trial court should have recognized her as a joint owner. We agree. We reverse and render in her favor, declaring that she is the owner of a thirteen/twenty-fourths (13/24ths) undivided interest in the subject property.
Facts
Clytie and Wilbert met in 1969. Wilbert lived with Clytie at her house in South Carolina for a while, then Clytie lived with Wilbert at his home in Lake Charles. Although his divorce was pending, Wilbert was still married, and the house where they lived in Lake Charles belonged to Wilbert's community. Wanting to get away from that house, its future ownership being uncertain, Clytie and Wilbert began searching for property on which to establish themselves. They found the property described in this suit, and in February 1971 they decided they would buy it.
The purchase took place on April 16, 1971. Neither Clytie nor Wilbert was named a vendee in the act of sale. The nominal purchaser was a Mrs. Trouard, Wilbert's sister. Title was placed in Mrs. Trouard's name because they did not want to take any chance that Wilbert's wife might get a share. These are facts found by the trial court and there is no dispute about them on this appeal.
The purchase price of the lot was $2400 cash. Of this amount Clytie put up $1300 and Wilbert $1100. Clytie borrowed her cash contribution from her son. These facts, too, were found by the trial court, findings that are clearly right.
After the purchase, Clytie and Wilbert together made a few minor improvements on the lot. They got married in 1973. They lived in a house trailer that was moved onto the lot. The trailer is not involved in this case, only the lot with its minor improvements. There was evidence that between 1971, the year of purchase, and 1984, the year of trial, the value of the property increased to over $20,000.
The marriage was a rocky one almost from the start. Clytie and Wilbert never did anything about the title to the property. In 1980 they were legally separated, and in 1984 when this trial took place the property still stood in the name of Mrs. Trouard.
The Issue
Wilbert claims the property is all his. Clytie claims she is a joint owner. The only issue on appeal is whether Clytie is an owner or not an owner.
What the Trial Court Decided
The trial court held that Clytie, in the nomenclature of the law a concubine, had the burden of proof as to every element of the case. The trial court found that she had carried that burden as to proof that she paid $1300 toward the purchase price, *105 and that she had produced conclusive and strict proof that the source of the $1300 was independent of the concubinage. Finding, however, that the acquisition of the property was not a venture, or enterprise, that arose independently of the illicit relationship, the trial court denied her the right to be declared an owner of the property in indivision. Having found that Clytie had no right to claim an ownership interest, the trial judge, without requiring any further evidence, declared Wilbert the sole owner of the property standing in the name of Mrs. Trouard. Clytie's rights were confined to recovery of $1300 with interest from judicial demand (August 23, 1983). The trial court's reasons included this: "... a concubine ... may recover only those funds that she has contributed to the actual purchase of assets which she claims to be an owner in indivision with her paramour", citing Keller v. Keller, 220 So.2d 745 (La.App. 1st Cir. 1969).
The trial court's written reasons appear to be saying that Clytie's burden was threefold: (1) she had to prove strictly and conclusively that the money she paid on the purchase came from a source independent of the concubinage; (2) even if she could prove that, her relief was limited to getting her money back; unless (3) the purchase was an enterprise arising independently of the illicit relationship. It was the number three burden that the trial court ruled Clytie failed to satisfy, thus denying her any right of ownership in the property.

OPINION
Had the trial court applied the burden of proof with equal force to Wilbert, he would have been denied any ownership in the property also. Since this result would have been an absurd one, it is apparent that the rules applied by the trial court on the facts of this particular case were error.
"Our jurisprudence seems to be settled to the effect that predicated upon equitable principles, the claim of a paramour and concubine will be recognized and enforced with respect to joint or mutual commercial ventures, provided such enterprises arose independently of the illicit relationship." Guerin v. Bonaventure, 212 So.2d 459, 461 (La.App. 1st Cir.1968). "In applying this rule, the courts have in effect permitted either concubine or paramours to establish what amounts to a partnership with the other party in the operation of a particular business or venture." Id., at 461. "The rationale of the rule ... is that where the concubinage is merely incidental to the business arrangement, the equitable rights of both parties will be recognized and enforced provided they be established by strict and conclusive proof." Id., at 461. This language makes it clear that the burden of proof on the concubine is applied with equal force to the paramour. Gathright v. Smith, 368 So.2d 679 (La.1978), p. 685, fn. 4. This rule as to burden of proof is also manifest in Heatwole v. Stansbury, 212 La. 685, 33 So.2d 196 (1947), where it was the paramour who lost in his bid to prove an interest in a savings account on deposit in the name of the concubine.
In our present case neither Clytie nor Wilbert has record ownership of the disputed property. Neither is named in the deed of acquisition as a vendee. Neither enjoys any presumption of ownership. Although Mrs. Trouard admitted she was not the owner, the title being in her name for convenience only, her admission does not establish who is the owner; it establishes only that she is not the owner. It is clear from the evidence, however, that the owners are either Clytie and Wilbert jointly, or Wilbert alone. If they were strangers their burden of proof under the circumstances of this case would be equal. As indicated by the above authority, the fact that they were living in a state of concubinage does not operate to change the equality of that burden.
The trial court erred in approaching the decision on the basis that all of the proof requirements in the case were on Clytie. This approach led to an erroneous judgment in Wilbert's favor recognizing him as the sole owner of the property though he paid only 11/24ths of the purchase price.
The court also erred in applying language taken from Keller v. Keller, supra, that, "a concubine may recover only those *106 funds that she has contributed to the actual purchase of assets which she claims to be an owner in indivision with her paramour." The Keller decision was distinguished in the later First Circuit case of Broadway v. Broadway, 417 So.2d 1272 (La.App. 1st Cir.1982), writ den. 422 So.2d 162 (La.1982), with the additional observation that the quoted language was but dictum in any event. As will be noted further in this opinion, the rule announced in Keller is at odds with the actual result in a number of cases, Broadway v. Broadway, supra, being one, where concubines have been recognized as owners of immovable property in indivision with their paramours, and were not confined to the limited remedy of recovery of their contributions to the purchase. We accordingly disagree with the Keller case pronouncement, and find that the trial court was in error in adopting it.
The trial court was also in error in concluding that the acquisition of the property was not an enterprise arising independently of the illicit relationship. The cases reflect that there is no public policy or legal impediment to a paramour and a concubine acquiring real property as covendees, and that when the concubine's name appears on the deed as a co-vendee there is a presumption that she is the owner of an undivided half interest. See Manning v. Harrell, 59 So.2d 389 (La.App. 2d Cir.1952); Succession of Washington, 140 So.2d 906 (La.App. 4th Cir.1962); Succession of Davis, 142 So.2d 481 (La.App. 2d Cir.1962); Jackson v. Hampton, 153 So.2d 187 (La.App. 2d Cir.1963), writ den. 244 La. 1013, 156 So. 2d 223 (1963); and Broadway v. Broadway, supra.
Clytie is not claiming her share of this property as a debt owed to her by Wilbert for services rendered. She is claiming her share as a co-owner of property that she bought and paid for. Mrs. Trouard, the nominal purchaser in whose name the property stood before, during, and after the marriage between Clytie and Wilbert, admitted that the property she allowed to be put in her name in 1971 did not belong to her. She testified that placing the property in her name was for convenience only, and that she believed she was holding the property for the benefit of Wilbert because he alone paid for it. In this belief she was wrong. The trial judge found that Clytie paid $1,300 of the $2,400 purchase price. The evidence in the record makes it clear that Clytie participated in the purchase as much as Wilbert; she and Wilbert chose the property; they together made the decision to buy it; they participated in the payment of the price; the property was put in neither her name nor his name nor their joint names, but in the name of another. Clytie insisted she was a co-owner, Wilbert testified he was the sole owner because he alone paid the price. The trial judge found as a fact that, concerning the payment of the price, Clytie was telling the truth and Wilbert was not. The trial judge did not reach the factual determination of whether it was their intent that Clytie be a co-owner, moving instead to what he perceived as the legal question of whether a concubine can be an undisclosed business partner of her paramour, and therefore a co-owner of land purchased with their joint means if the purchase was in furtherance of the illicit relationship.
Because the trial judge did not decide whether it was intended by Clytie and Wilbert that the property would ultimately be vested in their joint names as co-owners, it is our duty to do so. The record is complete and there is substantial testimony as to this issue. In our opinion the evidence greatly favors Clytie's version of the facts. Of the seven witnesses at the trial, only one, Wilbert, denied that it was his and Clytie's intent ultimately to put the property in their joint names. Most of the other witnesses gave testimony to one degree or another corroborating Clytie's testimony that it was always their intent that the property would be owned in indivision by the two of them, and that one day it would be vested in their joint names. Mrs. Trouard, the record owner, testified that Clytie wanted her to sign the property over. The reason why this was not done, apparently, was because Clytie and Wilbert commenced to have their own problems not long after they were married. One witness, *107 J.L. Spillar, Jr., who was both the real estate broker who handled the transaction and one of the owners-sellers of the property in 1971, testified that he remembered the discussion about putting the property in another person's name and that, although he could not remember the exact conversation, he was under the impression that the two of them were buying the property together. There is nothing in this record to indicate that this witness, or any of the others supportive of Clytie's version of events, were anything but truthful.
We find that Clytie has established her right to be declared a co-owner of the property. There remains simply the matter of recognizing what that interest is.
To determine the precise share of that ownership, we follow the rule announced in Manning v. Harrell, supra, as follows:
"Our jurisprudence recognizes that when property is acquired by several vendees and their specific shares are not stipulated in the act of conveyance a presumption arises that such interests shall be considered equal. This presumption is rebuttable to the extent that the court will decree ownership in proportion to the amount and consideration contributed by the respective vendees." (underscoring ours) The testimony in the present case did not focus on the precise percentage of the respective undivided ownerships, probably because Clytie was compelled to spend all of her energies on the more basic burden of establishing any ownership at all. However, the evidence is quite clear that she paid $1,300 and Wilbert paid $1,100 toward the purchase of the property, and we regard this as a ready-at-hand equitable basis for apportioning ownership.
For the reasons assigned, the judgment of April 27, 1987, declaring Wilbert Le-Doux the owner of Lot 4 of Block "A" of the Sherwood Forest Subdivision of Calcasieu Parish, Louisiana, and denying the claim of Clytie D. LeDoux to said property is reversed and set aside; judgment is rendered herein decreeing that Clytie D. LeDoux is an owner of a thirteen/twentyfourths (13/24ths) undivided interest in the property, and that Wilbert LeDoux is an owner of an eleven/twenty-fourths (11/24ths) undivided interest in the property. Costs at the trial level, where the disputes involved much more than the limited issue before us on this appeal, will remain as fixed by the trial court. Costs of this appeal will be paid by Wilbert LeDoux.
REVERSED AND RENDERED.