577 So.2d 105 (1991)
SUCCESSION OF Charles J. LeBLANC.
No. 90-CA-0553.
Court of Appeal of Louisiana, Fourth Circuit.
January 31, 1991.
Amended on Rehearing March 14, 1991.
*106 Frank Sloan, Covington, for appellant.
Jacob Kansas, New Orleans, for appellees.
Before GARRISON, LOBRANO and BECKER, JJ.
BECKER, Judge.
The decedent, Charles J. LeBlanc, died intestate on November 22, 1982. His surviving spouse, Lillian LeBlanc, was qualified as administratrix of the succession. Mr. LeBlanc had been married once before to Alder Polk LeBlanc, of which marriage one daughter, Patricia LeBlanc Turbington, was born.
While still married to Alder Polk LeBlanc, Mr. LeBlanc purchased real estate located at 3200-02 Toulouse Street with Lillian LeBlanc in 1971. Although not married, they purchased the property as husband and wife. After purchasing the house, the decedent and Lillian LeBlanc moved into the house together. Approximately one year later, Lillian LeBlanc moved out. Lillian LeBlanc moved back into the house in 1979. During the interim, Mr. LeBlanc resided in the house with a female companion. The decedent finally obtained a divorce from Alder Polk LeBlanc on December 5, 1978. He and Lillian LeBlanc were married on February 13, 1979.
Before he died, Mr. LeBlanc collected over fourteen thousand dollars in retirement benefits from Social Security. These monies were obtained fraudulently as Mr. LeBlanc was working fulltime while receiving the retirement benefits. The Social Security Administration has filed a claim against the succession to recover these funds.
The property on Toulouse Street was sold in August of 1985 pursuant to a joint motion and court order. The funds from the sale were placed in an interest bearing account where they remain to date.
In September of 1983, Patricia LeBlanc Turbington and Alder Polk LeBlanc moved to traverse the Detailed Descriptive List and List of Debts filed by Lillian LeBlanc as administratrix. Movers argued that (1) the house purchased by Mr. LeBlanc and Lillian LeBlanc belonged entirely to the separate estate of Charles LeBlanc; (2) the separate estate of Charles J. LeBlanc was entitled to a credit from mortgage payments made during a period in the mid-1970's in which Lillian LeBlanc did not reside with Mr. LeBlanc in the house; (3) the debt owed to the Social Security Administration was a community rather than separate debt; (4) the proceeds of a mortgage life insurance policy should have been credited to the separate estate of Charles J. LeBlanc; (5) Lillian LeBlanc was not entitled to credit for mortgage and car loan payments made after decedent's death; and (6) questioned whether certain movables were community or separate in nature.
After a hearing on the motion, the trial court found that Lillian LeBlanc was the *107 owner of one-half interest in the property on Toulouse Street; that Alder Polk LeBlanc and Patricia Turbington LeBlanc were each one-fourth owners of the property; that no reimbursement of mortgage payments was owed by Lillian LeBlanc to the succession; that the claim of the Social Security Administration was a community debt; that the insurance proceeds from the mortgage life insurance policy inured to the benefit of the succession alone; and that Lillian LeBlanc was entitled to a usufruct over the automobile and other movables which formed part of the community.
Lillian LeBlanc has appealed the judgment of the trial court, arguing that the trial court erred in (1) crediting the proceeds of the life insurance policy to the separate property of the decedent rather than the community; (2) failing to find that Lillian LeBlanc is entitled to reimbursement for one half of all mortgage and car loan payments made from the date of decedent's death; and (3) holding that the claim of the Social Security Administration is a community rather than a separate debt.
Alder Polk LeBlanc and Patricia LeBlanc Turbington have answered the appeal contending that the trial court erred in (1) accepting the authentic act of acquisition in recognizing Lillian LeBlanc and Charles J. LeBlanc as co-purchasers and refusing to allow a collateral attack of the document, the status of the parties, and the nature of their interests; (2) recognizing Lillian LeBlanc as a one-half owner in the property on Toulouse Street; and (3) failing to charge the entire Social Security claim to Lillian LeBlanc. They also contend that assuming that Lillian LeBlanc is an one-half owner in the property in question, the trial court failed to recognize the succession's claim against Lillian LeBlanc for one-half of all mortgage and insurance payments made by Charles LeBlanc and not reimbursed by Lillian LeBlanc.
The property at 3200-02 Toulouse Street was purchased by Charles LeBlanc and Lillian LeBlanc in 1971. Both signed the act of sale as co-purchasers, and represented themselves to the notary as husband and wife. The act of sale was confected in authentic form. The law is clear that an authentic act is full proof of the agreement contained therein and cannot be attacked by parol evidence in the absence of allegations and proof of fraud, error, a counter-letter, interrogatories or admissions of fact. Morrison v. Richards, 343 So.2d 375 (La.App. 4th Cir.1977), writ denied, 345 So.2d 503 (La.1977); Weysham v. Aiavolasiti, 227 So.2d 798 (La.App. 4th Cir. 1969). Prior cases have allowed the introduction of parol evidence only for the limited purpose of determining the respective interests of co-vendees listed in the authentic act, when such act is silent as to that issue. See Oxford v. Barrow, 43 La.Ann. 863, 9 So. 479 (1891); Manning v. Harrell, 59 So.2d 389 (La.App. 2nd Cir.1952); and Succession of Washington, 140 So.2d 906 (La.App. 4th Cir.1962).
In such instances where property is acquired by several vendees and their specific shares are not stipulated in the act of conveyance, a presumption arises that such interests shall be considered equal. The presumption is rebuttable to the extent that the court will decree ownership in proportion to the amount and consideration contributed by each of the vendees. Manning v. Harrell, supra.
In the present case, the trial court found that Charles LeBlanc and Lillian LeBlanc each had a one-half interest in the property. The court further found that at the time of acquisition of the property, Charles LeBlanc was married to Alder Polk LeBlanc, and although physically separated, not legally separated. Under the legal regime of community of acquets and gains, there is a legal presumption that Charles LeBlanc's one-half interest formed part of the community between Charles LeBlanc and Alder Polk LeBlanc. The trial court was correct in dividing this one-half interest evenly between the heir of Charles LeBlanc, Patricia LeBlanc Turbington, and Alder Polk LeBlanc as there was no evidence offered to disprove the presumption.
Appellees, Alder Polk LeBlanc and Patricia LeBlanc Turbington argue that the trial court should have found that the entire property was owned exclusively by Charles *108 LeBlanc. They contend that the decedent and Lillian LeBlanc were involved in a paramour-concubine relationship prior to the purchase of the property, and that Lillian LeBlanc did not contribute any of her funds to buy the house. They allege that Lillian LeBlanc's interest in the property was a result solely of the paramour-concubine relationship. However, there was no testimony at trial that such a relationship existed prior to the purchase of the subject property. Further, Lillian LeBlanc testified that she put up $2,000.00 of her own money for the downpayment of the property and continually contributed to the monthly mortgage payments.
The trial court's reasons for judgment are silent as to whether it found that a paramour-concubine relationship existed between Charles LeBlanc and Lillian LeBlanc. Even if such a relationship did exist, public policy does not prohibit a paramour and concubine from acquiring real property as co-vendees. LeDoux v. LeDoux, 534 So.2d 103 (La.App. 3rd Cir.1988). However, the acquisition must be independent of the concubinage; that is, the concubine must show that her contribution to the acquisition was obtained through her own capital and industry. See Malady v. Malady, 25 La.App. 448 (1873); Heatwole v. Stansbury, 212 La. 685, 33 So.2d 196 (1947); Delamou v. Roger, 7 La.Ann. 152 (1852); Broadway v. Broadway, 417 So.2d 1272 (La.App. 1st Cir.1982), writ denied, 422 So.2d 162 (La.1982). Further, when the concubine's name appears on the deed as a co-vendee there is a presumption that she is the owner of an undivided half interest. Manning v. Harrell, supra; Succession of Washington, supra, Succession of Davis, 142 So.2d 481 (La.App. 2nd Cir. 1962); Jackson v. Hampton, 153 So.2d 187 (La.App. 2nd Cir.1963), writ denied, 244 La. 1013, 156 So.2d 223 (1963); Broadway v. Broadway, supra; LeDoux v. LeDoux, supra.
Therefore, the trial court did not commit error in finding Lillian LeBlanc owner of an one-half interest in the subject property. Nor did the court commit error in finding that decedent's estate is not entitled to reimbursement of mortgage payments. Lillian LeBlanc's testimony that she continually made payments to decedent was not rebutted by the appellees.
The trial court was also correct in finding the debt owed to the Social Security Administration was a community debt. Mr. LeBlanc was the direct recipient of the fraud perpetrated upon the Social Security Administration. He received over fourteen thousand dollars in retirement benefits even though he was working fulltime. Lillian LeBlanc claims that she had no knowledge of the fraudulent activity. She testified at trial that she did not know that Mr. LeBlanc was not entitled to receive these benefits. However, Lillian LeBlanc did admit that she cashed the checks for the decedent on a regular basis.
L.S.A.-Civil Code article 2360 provides that an obligation incurred by a spouse during the existence of a community property regime for the common interest of the spouses or for the interest of the other spouse is a community obligation. Except for separate obligations discussed in Civil Code article 2363, all obligations incurred by a spouse during the existence of the community regime are presumed to be community obligations. L.S.A.-C.C. article 2361. An obligation resulting from a spouse's intentional wrong not perpetrated for the benefit of the community, however, is a separate obligation. L.S.A.-C.C. article 2363; Ledet v. Ledet, 496 So.2d 381 (La.App. 4th Cir.1986).
The trial court concluded that the debt owed to the Social Security Administration was "incurred during the existence of the community property regime between the decedent and Lillian Milanes LeBlanc, and is therefore presumed to be a community obligation." There was no evidence produced by any of the parties to rebut this presumption, i.e., to show that the community did not benefit from the funds illegally obtained.
In 1977, Charles LeBlanc purchased a policy of mortgage life insurance. Named as the primary beneficiary was Gulf Coast Investment Company, the company holding the mortgage on the property on Toulouse *109 Street. After their marriage in 1979, Lillian LeBlanc was added to the policy as the secondary beneficiary. At the time of Charles LeBlanc's death, there remained an outstanding balance due on the mortgaged property. The trial court found that the decedent had purchased the mortgage insurance to reduce his separate obligation on the mortgage note and held that the "proceeds derived from the mortgage insurance policy must be used for the benefit of Mr. LeBlanc's estate."
The trial court erred in these findings. The change of beneficiary form which was executed by Charles LeBlanc in 1979 also bore the signature of Lillian LeBlanc. The form required the policyholder's spouse to sign the form if the policy was community property. In light of this document, we must find that Charles LeBlanc intended for the policy to be used for the benefit of both his and Lillian LeBlanc's each one-half interests in the property. If he had not intended for the policy to provide such benefits, he would not have had Lillian LeBlanc sign the form, and named her as secondary beneficiary. The fact that Charles LeBlanc first obtained the policy in 1977 does not diminish the characterization of the policy as being for the benefit of both decedent and Lillian LeBlanc as the policy was renewable every year. Thus, the trial court erred in applying the benefits solely to the decedent's estate. The policy in question was jointly owned by decedent and Lillian LeBlanc. Therefore, one-half of the benefits from the policy should be applied to the decedent's one-half interest in the property. The other one-half of the benefits are to be applied to Lillian LeBlanc's one-half interest in the property and her corresponding one-half share of the mortgage debt. Thus, the decedent's estate is not entitled to reimbursement from Lillian LeBlanc for any reduction in the mortgage debt which occurred through the payment of the policy proceeds to the mortgagee, Gulf Coase Investment Company.
Lillian LeBlanc also argues on appeal that the trial court erred in failing to find that she is entitled to reimbursements for one-half of all mortgage and car loan payments made from the date of decedent's death. In regards to the car loan payments made by Lillian LeBlanc, the vehicle in question was purchased during the marriage of decedent and Lillian LeBlanc. Therefore, the vehicle and debt on the vehicle form part of the community property regime which existed between decedent and Lillian LeBlanc. Under L.S.A.-C.C. article 890, Lillian LeBlanc, as the decedent's surviving spouse, has a legal usufruct on decedent's one half interest in the vehicle. As usufructuary, Lillian LeBlanc has the use of the vehicle until death or remarriage. However, she also has the obligation to ensure that the succession's share of the debt on the vehicle is satisfied. Not until the usufruct ends is the usufructuary entitled to reimbursement for any payments made. See L.S.A.-C.C. articles 590, 591, 592 and Comments thereunder. Accordingly, the trial court was correct in denying Lillian LeBlanc's request for reimbursement of the car loan payments. Such a request is premature as Lillian LeBlanc still has an usufruct on decedent's interest in the vehicle.
Lillian LeBlanc, as a co-owner of the real estate located at 3200-02 Toulouse Street, is entitled to seek reimbursement for decedent's share of the mortgage payments made after decedent's death. However, any reimbursements received would be off-set by decedent's share of the fair market rental value of the property for the period of time Lillian resided in the house after decedent's death. See L.S.A.-C.C. article 480; Fox v. Succession of Broussard, 161 La. 949, 109 So. 773 (1926); Johnson v. Hall, 185 So. 64 (La.App.1938). In support of her right to reimbursement, appellant, Lillian LeBlanc, attempted to introduce at trial a record of the mortgage payments made after decedent's death. However, opposing counsel objected to this evidence as the amount submitted allegedly included insurance premiums, late payments and interest. The record on appeal is insufficient for this Court to determine decedent's share of the mortgage payments made by appellant. Further, the record is devoid of *110 any testimony of the fair market rental value on the property in question. Therefore, it is necessary that this matter be remanded to the trial court for a determination of the amount of reimbursement, if any, to which Lillian LeBlanc is entitled for the mortgage payments after decedent's death.
Accordingly, the judgment of the trial court is affirmed in part, reversed in part, and reversed and remanded in part.
AFFIRMED IN PART; REVERSED IN PART; REVERSED AND REMANDED IN PART.

ON APPLICATION FOR REHEARING
PER CURIAM.
We have granted appellant, Lillian M. LeBlanc's, request for rehearing solely for the purpose of correcting a typographical error and to amend the judgment of this Court requiring appellant to reimburse appellees for their share of the fair market rental value of the house. Where the opinion cites to Civil Code article 4800, the correct citation should be L.S.A.-C.C. article 480.
In light of the Louisiana Supreme Court case, Cahn v. Cahn, 468 So.2d 1176 (La.1985), we must amend the portion of the opinion requiring appellant to reimburse appellees for their share of the fair market rental value of the property. This Court affirmed the trial court's finding that Lillian LeBlanc and decedent, Charles J. LeBlanc, were each owners of an one-half interest of the Toulouse Street property. Upon decedent's death, appellees, Patricia LeBlanc Turbington and Alder Polk LeBlanc each acquired an one-fourth interest in the property. Under Cahn v. Cahn, supra, a co-owner has the right to occupy the premises without the obligation of paying rent to other co-owners for occupancy of their undivided interests. Therefore, Lillian LeBlanc, as a co-owner of the Toulouse Street property, had the right to reside in the property after decedent's death without incurring the obligation of paying rent to the other co-owners.
Appellant argues that since she is not required to reimburse appellees for the rental value of the property, then a remand to the trial court is not necessary. We disagree. The documents introduced at trial concerning the mortgage payments made by appellant after decedent's death do not differentiate any late or special charges incurred by appellant from the regular mortgage payments and concurrent fees. Thus, it still is necessary for this matter to be remanded to the trial court for a determination of the amount of reimbursement appellant is entitled to as a result of the mortgage payments made after decedent's death.
Subsequent to the granting of Lillian LeBlanc's request for rehearing, appellees, Alder Polk LeBlanc and Patricia LeBlanc Turbington, filed a request for rehearing. Appellees' request for rehearing is hereby denied.
REHEARING GRANTED; JUDGMENT AMENDED.