03-169 C/W 03-837

CLEMENTINE FAIRROW, ET AL.

VERSUS

JAMES E. MARVES, ET AL.

********\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NUMBER 196,834
HONORABLE GEORGE C. METOYER, JR., DISTRICT JUDGE

********\*

JIMMIE C. PETERS
JUDGE

********\*

Court composed of Billie Colombaro Woodard, Jimmie C. Peters, and Michael G. Sullivan, Judges.

AFFIRMED.

Woodard, J., dissents and assigns written reasons.

Bradley Drell
Michael E. Trachtenberg
Gold, Weems, Bruser, Sues & Rundell
Post Office Box 6118
Alexandria, LA 71307
(318) 445-4516
COUNSEL FOR PLAINTIFFS/APPELLEES:
    Clementine Fairrow
    Eloise Ann Fairrow Parks

Edward A. Kaplan
Post Office Box 12386
Alexandria, LA 71315
COUNSEL FOR DEFENDANTS/APPELLANTS:
    James E. Marves
    Succession of James Marves

PETERS, J.

This litigation involves the ownership of approximately eleven and one-half acres of immovable property located in Rapides Parish, Louisiana, and the basic facts are not in dispute. On February 9, 1945, Henry Fairrow purchased the property from Charles M. Roberts. The act of transfer stated that Mr. Fairrow was "married to and residing in community with Laura King." This statement was not true. Although she was living with Mr. Fairrow on February 9, 1945, Ms. King was still married to Horace Marbs, whom she had married on June 21, 1924. In fact, Horace Marbs and Ms. King were not divorced until May 24, 1956.

On February 7, 1956, Mr. Marbs filed a petition for divorce in Rapides Parish, asserting that he and Ms. King had lived separate and apart since February of 1929. He listed the children born of the marriage as James Marbs (born in 1925), Horace Marbs, Jr. (born in 1927), and Rosa Mae Marbs (born in 1929).[1] Ms. King was personally served with the petition and citation on February 10, 1956. When she failed to respond to the petition, Mr. Marbs caused a preliminary default to be entered. He confirmed that preliminary default on May 24, 1956, and obtained a judgment of divorce against his former wife.

Sometime after the purchase of the property at issue, Mr. Fairrow and Ms. King dissolved their relationship. In 1963, Mr. Fairrow married Ora Dee Fairrow, and that marriage produced three children: Clementine Fairrow, Angela Fairrow,[2] and Eloise Ann Fairrow Parks.

---

[1]The record reflects that James Marbs and James Marves are one and the same person, as are Horace Marbs, Jr., and Horace F. "Freddie" Marves and Rosa Mae Marbs and Rosa Mae Marves. It appears that at some point after Horace Marbs and Laura King separated, the spelling of the surname of the three children changed from "Marbs" to "Marves." The record contains no explanation for this change.

[2]Angela Fairrow apparently died at a young age. However, the record establishes only that at the time of her death, she left neither child nor spouse.

Henry Fairrow died in 1968.[3]  On June 15, 1999, Clementine Fairrow and Eloise Ann Fairrow Parks obtained a judgment of possession in their father's succession recognizing them as his sole heirs and placing them in possession of the immovable property at issue in this litigation.  They instituted the instant suit on July 28, 1999, asserting that the reference to Ms. King as their father's wife creates a cloud on the title to the immovable property at issue.  Thus, they sought a declaratory judgment to the effect that Ms. King's heirs have no interest in the property.  They named as defendants:  (1)  James E. Marves, Rosa Mae Marves' son; (2) the absent and unknown heirs of Rosa Mae Marves; (3) the absent and unknown heirs of Freddie Marves, now deceased; and (4) James Marves.

James E. Marves and James Marves personally answered the petition.  In their answer, they each identified the heirs of Horace F. "Freddie" Marves by name.  Despite this identification, the curator appointed to represent his heirs answered the petition on behalf of "the absentee defendant, **Freddie Marves**."[4]  The record contains no responsive pleadings on behalf of the absent and unknown heirs of Rosa Mae Marves.

While numerous other legal steps were taken in the prosecution and defense of this matter, the appeals now before us arise from the trial court's grant of summary judgments in favor of Ms. Fairrow and Ms. Parks, recognizing them as the sole owners of the immovable property at issue.

---

[3]While the record does not establish the dates of their deaths, there is no dispute that both Laura King and Ora Dee Fairrow are deceased.

[4]The initial pleadings filed by James E. Marves and James Marves assert that, at the time the litigation giving rise to this appeal was filed, Laura King, Rosa Mae Marves and Horace F. "Freddie" Marves had died.  Rosa Mae Marves was survived by her son, James E. Marves.  Horace F. "Freddie" Marves was survived by his children, Horace F. Marves, Jr., Sandra Marves, Cheryl Marves, and Lynn Marves.

The original motion for summary judgment filed by Ms. Fairrow and Ms. Parks sought relief against all of the defendants. However, when the motion first came to trial on August 5, 2002, the parties informed the trial court that James Marves had recently died and that no succession representative had been appointed for his estate. The trial court then severed the claim for relief against James Marves and, after considering the record and hearing the arguments of counsel, rendered judgment in favor of Ms. Fairrow and Ms. Parks and against all of the other defendants. The judgment signed by the trial court on September 13, 2002, states in part that "James E. Marves, the heirs of Rosa Mae Marves,[5] and the heirs of Freddie Marves[6] are hereby declared to have no interest in" the property at issue. James E. Marves timely appealed this judgment.

On November 4, 2002, Ms. Fairrow and Ms. Parks filed a second motion for summary judgment, naming the provisional administrator of the succession of James Marves as the party at interest in the motion. By court order signed February 25, 2003, James E. Marves, Edna Marves, Eddie Ray Marves, Jerrlean Marves, and Sims Marves were substituted as co-administrators in place of the original provisional administrator, Susan Fiser. After a February 24, 2003 trial of this motion for summary judgment, the trial court rendered judgment in favor of Ms. Fairrow and Ms. Parks and against the co-administrators, declaring that James Marves' estate had no interest in the immovable property at issue. The trial court signed a judgment to this effect on March 6, 2003, and the co-administrators timely perfected this appeal. We have

_____

[5]This reference is made despite the fact that the record clearly establishes that Rosa Mae Marves' only heir is James E. Marves.

[6]The curator ad hoc who filed the original answer on behalf of Freddie Marves did not appear at the trial on the motion. However, subsequent to the trial, the curator ad hoc filed an answer to the motion for summary judgment wherein he voiced no opposition to the motion and agreed that Ms. Fairrow and Ms. Parks were entitled to judgment as a matter of law.

consolidated these appeals for consideration by this court.

## OPINION

Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B). The movant bears the burden of proof. La.Code Civ.P. art 966(C)(2). "However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact." *Id.*

### *Appeal of James E. Marves*

The evidence available to the trial court at the August 5, 2002 hearing included the February 9, 1945 credit sale deed in which Charles M. Roberts transferred the property at issue to "HENRY FAIRROW, married to and residing in community with Laura King." Henry Fairrow signed the deed as vendee, thereby acknowledging the credit provisions contained therein. Laura King did not sign the deed and appeared nowhere on the deed as a co-vendee. The trial court also had before it the uncontroverted evidence that Ms. King was married to another man at the time Mr. Fairrow purchased the property.

As a matter of law, "[a] married person may not contract another marriage."

4

La.Civ.Code art. 88. Further, "[t]he legal regime of community of acquets and gains applies to *spouses* domiciled in this state . . . ." La.Civ.Code art. 2334 (emphasis added). Thus, through the undisputed evidence, Ms. Fairrow and Ms. Parks established that their father was the sole purchaser of the property at issue and that he was not married to Ms. King at the time of the purchase. Therefore, based on those undisputed facts, as a matter of law Ms. Fairrow and Ms. Parks alone were entitled to be recognized as owners of the property. Accordingly, the trial court did not err in granting the September 13, 2002 summary judgment in favor of Ms. Fairrow and Ms. Parks.

### *Appeal of the Co-Administrators of the Succession of James Marves*

Nevertheless, at the February 24, 2003 hearing, the co-administrators sought to create a material issue of fact so as to preclude summary judgment through the introduction of the affidavits of Joseph W. Marves, Bobbie Nell Phillips, and Boyd Williams. Specifically, in his affidavit, Joseph W. Marves asserted that he is a life-long resident of Rapides Parish, that he knew Henry Fairrow and Laura King, that they lived together until her death and held themselves out as husband and wife, and that Ms. King worked the property by growing crops during the time she resided with Mr. Fairrow. Bobbie Nell Phillips' affidavit added the assertion that Ms. King "worked during [the period she resided with Mr. Fairrow] outside of the home for her own income including employment at the Camp Clairborne [sic] Army Camp." Mr. Williams' affidavit included the following paragraphs:

3.  I knew Laura King personally, I brought her and her children to work every night and picked them up every morning, in 1941. They were working at Army Camp Claiborne, located between what is now Forest Hill & Bringhurst.
4.  I know that Laura King was living with Henry Fairrow whom [sic] was never employed at the time. The property they brought [sic] was Homestead exempt. I know that Laura King would go each

5

year to sign the paper work. When her grandson James Marves became old enough, she would send him to the clerk[']s office to sign the necessary paper work for her.

5.    I know that the property on Robinson Road was purchased in 1945 which was during a time when only Ms. Laura King and her children, James Marves, Freddie Marves, and Rosie [sic] Mae Marves were working. Henry Fairrow never worked until 1949 or 1950 when he went to work for the Railroad.

Although these affidavits were submitted at only the February 24, 2003 hearing, it appears that both appeals currently before us rely on the assertions in the affidavits as establishing a genuine issue of material fact as to whether Ms. King made a contribution to the acquisition of the property through her own capital and industry.[7] In support, the defendants cite jurisprudence to the effect that, as a matter of law, concubines are not prevented from asserting certain property claims against their paramours. *See Heatwole v. Stansbury*, 212 La. 685, 690, 33 So.2d 196, 197 (1947) (holding that "concubines, although under certain disabilities, in the interest of good morals, are not prevented from asserting claims arising out of business transactions between themselves, independent of the concubinage"); *Legarde v. Dabon*, 155 La. 25, 29, 98 So. 744, 745-46 (1923) (holding that "if a man and woman contract to carry on business together, their subsequent cohabitation does not destroy or lessen any right which she may have upon him for a remuneration for her services"); *Succession of LeBlanc*, 577 So.2d 105, 108 (La.App. 4 Cir. 1991) (holding that "public policy does not prohibit a paramour and concubine from acquiring real property as co-vendees" but that "the acquisition must be independent of the concubinage; that is, the concubine must show that her contribution to the acquisition was obtained through her own capital and industry"); *LeDoux v. LeDoux*, 534 So.2d 103, 106 (La.App. 3

---

[7]Because we find that the evidence presented at the February 24, 2003 hearing was insufficient to create a genuine issue of material fact, we need not address whether the appeal of James E. Marves may properly rely on this evidence.

Cir. 1988) (holding that "there is no public policy or legal impediment to a paramour and a concubine acquiring real property as co-vendees, and that when the concubine's name appears on the deed as a co-vendee there is a presumption that she is the owner of an undivided half interest"); *Broadway v. Broadway*, 417 So.2d 1272, 1276 (La.App. 1 Cir.) (holding that "if the concubine can furnish strict and conclusive proof that her capital and industry, obtained independent of the concubinage, contributed a full share to the acquisition of the subject property, then equity dictates she be declared a one-half owner"), *writ denied*, 422 So.2d 162 (La.1982).

"Material facts are those that determine the outcome of the legal dispute. In deciding whether certain facts are material to an action, we look to the applicable substantive law." *Cobb v. Delta Exps., Inc.*, 03-0033, p. 4 (La.App. 3 Cir. 6/4/03), 847 So.2d 739, 742 (citation omitted), *writs denied*, 03-1906, 03-1936 (La. 10/31/03), 857 So.2d 483, 485. As set forth above, Ms. King did not sign the deed and nowhere on the deed did she appear as co-vendee; thus, there is no presumption that she owned an undivided one-half interest in the property. The deed itself shows that Mr. Fairrow acquired the property for $1,500.00, $1,100.00 of which was paid "cash in hand" with the remaining $400.00 to be paid in one installment due within six months of the date of the deed. Importantly, there is no evidence to show that Ms. King actually contributed to the *acquisition of the property* at issue through her own capital and industry. The defendants' evidence merely supports that Ms. King worked outside of the home and earned income at the time of the purchase of the property and that Mr. Fairrow was not working at the time of the purchase of the property. These premises, even if accepted as true, do not compel or even permit for that matter, without more, the conclusion that Ms. King had to have contributed to the acquisition of the property because she was the only one working at the time of the acquisition. Mr. Fairrow

7

might have had other financial sources such as savings, investments, disability benefits, an inheritance, etc. One is left only to speculate. The fact that Ms. King worked outside of the home and earned income at the time of the purchase and the fact that Mr. Fairrow was not working at that time are simply not material facts because they are not determinative of the outcome of this dispute. Without more, these affidavits do not create a genuine issue of material fact so as to preclude summary judgment in favor of Ms. Fairrow and Ms. Parks. Thus, we find no error in the trial court's March 6, 2003 grant of their motion for summary judgment.

## DISPOSITION

For the foregoing reasons, we affirm the judgments below at the appellants' cost.

**AFFIRMED.**

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

CLEMENTINE FAIRROW, ET AL.

    Plaintiffs - Appellees

Versus

JAMES E. MARVES, ET AL.

    Defendants - Appellants

    On appeal from the Ninth Judicial District Court [No. 196,834], for the Parish of Rapides, State of Louisiana; the Honorable George C. Metoyer, District Judge, presiding.

Woodard, J., dissenting.

    I respectfully dissent from the majority's opinion.

    Ms. King's heirs provided evidence, the inferences of which indicate that, more likely than not, it was **her** separate funds, not his, which were responsible for the property's purchase. As our supreme court has instructed, "[F]actual *inferences* reasonably drawn from the evidence **must be construed in favor of the party opposing the motion** [for summary judgment], and **all doubt must be resolved in the opponent's favor**."[1] (Emphasis added.) Thus, the inferences from Ms. King's evidence should preclude summary judgment for Mr. Fairrow's heirs. However, instead, the majority opinion ignores those inferences and affirms the judgment, and does so, solely, on the basis of a **rebutted presumption**; namely, because the two were not married, after all, Mr. Fairrow's signature as vendee on the deed in 1945, leads to the presumption that he was the property's only owner. They stop here.

---

[1] *Willis v. Meadors*, 00-2507 (La. 12/8/00), 775 So.2d 1049.

However, the material inferences from Ms. King's evidence adequately rebuts this presumption.

Most telling was Ms. King's direct evidence, which Mr. Williams' affidavit provided, that he had personal knowledge that **Laura King was the one who went to sign the paperwork on the property (in question) each year**, until her grandson, James E. Marves became old enough, at which time, he began signing for her.

Also important is the direct evidence that $1,100.00 of the $1,500.00 purchase price was paid in cash, $400.00 being financed, and that, only, she and her children, not Mr. Fairrow, were employed at the time. Mr. Joseph W. Marves' stated in his deposition that he had personal knowledge that she used to work the fields on the subject property. Ms. Bobbie Nell Phillips stated that she had personal knowledge that Laura King generated income by working outside the home, and that Camp Claiborne Army Camp employed her. Finally, Mr. Boyd Williams stated that, in 1941, he transported her and her children to and from Army Camp Claiborne, where they worked. Furthermore, Mr. Williams noted that he knew that the property was purchased **in 1945 during a time when *only* Laura King and her children were working** and that **Henry Fairrow did not work until 1949 or 1950** when he began working for the railroad.

On the other hand, Mr. Fairrow's heirs rested, completely, on the one presumption in the act of sale and mortgage and their evidence of a legal impediment to Mr. Fairrow's and Ms. King's marriage. His heirs presented no countervailing evidence of his contributions towards the purchase price nor did they satisfy their shifted burden[2] to provide any evidence that he had the income means from a source, other than employment, to make contributions.

Furthermore, we do not know from the record whether he knew that there was a legal impediment to their "marriage." All we know is that the two were living together and holding themselves out as husband and wife. **Both** were involved in co-habitation. Thus, we should not "punish" Ms. King's heirs and reward Mr. Fairrow's by denying her rightful and, apparently, well earned interest in this property because she "lived in sin," especially when we have no reason to believe that his behavior was no different from hers.

---

[2]La.Code Civ.P. art. 966(C)(2).

2

Indeed, the most reasonable factual inferences to draw from all of the evidence in this record is that Mr. Fairrow, not Ms. King, is the one who obtained an interest in the property because of the concubinage—that it was he who enjoyed the fruits of Ms. King's and her children's labor—and that it was her separate funds which actually purchased the property.

Additionally, his recital of marriage in the deed, while incorrect, is useful for illuminating his intentions concerning the property. The deed is a contract. The main goal in contract interpretation is to determine the *intent* of the parties.[3] In 1945, when the purchase of this property was made, there were legal and practical considerations which weighed against a "wife"signing a deed as co-vendee and would explain the instant situation. For example, the recital of marriage in the deed gave rise to a presumption that Ms. King owned a one-half undivided interest in the property,[4] even if she did not sign it.

Additionally, for Ms. King to have signed the document as a co-vendee would have been pointless, as it would have given her no additional rights over the property.[5] Even purchasing the property in her own name, instead of in Mr. Fairrow's, would have given her no additional rights in the property.[6] Although, the Plaintiffs have proved that the couple was not, in fact, legally married, this does not eradicate the parties' intent, regarding ownership of this immovable property, which is expressly reflected in the act of sale. The two were holding themselves out in the community as a married couple who, obviously, wanted to share rights to this property.

To understand this couple's dilemma and thinking in 1945, we must understand the legal backdrop and societal mentality of the time. At that time, La.Civ.Code art. 2404 established the presumption that property acquired in the name of only one of the parties during the marriage was community property; the husband was considered to be the "Head and Master" of the community, having the exclusive right to manage, alienate, and encumber the property regardless of whether his name, her name, or both

---

[3]La.Civ.Code art. 2045.

[4]*See* La.Civ.Code art. 2404 (1870), repealed by Act 627 (1978).

[5]*See Id.*; *See also W.K. Investment Co. v. Tyler*, 303 So.2d 777 (La.App. 1 Cir. 1974), *writ denied*, 305 So.2d 543 (La.1975).

[6]La.Civ.Code art. 2404 (1870), repealed by Act 627 (1978).

3

names appeared in the act of sale.[7]  Further, given Mr. Fairrow's declaration of marriage, if he had intended to own the property as his separate property, he was required to make a "double declaration," stating that he intended to own the property as his separate property and that he had acquired it with his separate funds.[8]  Thus, his failure to do so gives rise to a presumption that he did not intend for the property to be his separate property and that he did not use his separate funds to purchase it.[9]  Indeed, the evidence, which Ms. Kings' heirs provided, also, factually supports these conclusions.

Further, given the prevailing law and societal notions at that point in history, we must acknowledge the practical reasons that may have prevented Ms. King from purchasing the property in her own name.  If she had purchased the property in her own name, it would not have been sufficient to put third parties on notice, without further investigation, that both of them owned the property; whereas, Mr. Fairrow's purchase of the property, absent a double declaration, automatically, put third parties on notice that they both had an ownership interest.[10]

Also, the purchase involved an extension of credit for $400.00.  If Ms. King's name had been listed as vendee, a third party, believing that she was married to Mr. Fairrow, would not likely have extended this credit to her, knowing that Mr. Fairrow had the power to invalidate the sale; whereas, that would not have been a concern if

---

[7]*Id.*

[8]La.Civ.Code art. 2334 (1870), repealed by Act 627 (1978).

[9]Nathan, *Notes--Community Property, Sale and Resale of Immovable--Necessity of Double Declaration*, 34 TUL.L.REV. 385 (1960).  *See also Smith v. Smith*, 230 La . 509, 89 So.2d 55 (1956); *Succession of Hemenway*, 228 La. 572, 83 So.2d 377 (1955); *Borne v. Calmes*, 284 So.2d 815 (La.App. 4 Cir. 1973); *Succession of Pittman*, 282 So.2d 799 (La.App.1 Cir. 1973); *Boulet v. Fruge*, 221 So.2d 602 (La.App. 3 Cir. 1969); *LaFleur v. Guillory*, 181 So.2d 323 (La.App. 3 Cir. 1965).

[10]*See e.g. Sharp v. Zeller*, 110 La. 61, 34 So. 129 (1902); *Succession of Burke*, 107 La. 82, 31 So. 391 (1902); *Hero v. Block*, 44 La.Ann. 1032, 11 So. 821 (1892); Huie, *Separate Ownership of Specific Property*, 26 TUL.L.REV. 427 (1952); Wilcox, *Civil Law--Comments--The Marital Status Of Property Purchased With Separate Funds*, 9 TUL.L.REV. 107.

Mr. Fairrow was listed as the vendee because Ms. King had no power to invalidate the sale.[11]

Thus, it appears from the evidence that the simple fact that Mr. Fairrow's name, alone, appears as vendee on the deed is more likely a result of the prevailing mentality in 1945 associated with the **repealed** "Head and Master" policy than it is a foregone conclusion that he, alone, paid for and owned the property.

I submit that to discover the true ownership of this property and to do justice, we must look deeper than to the rebutted presumption, the majority relies on, and that inquiry requires a trial, rendering summary judgment inappropriate.

---

[11]La.Civ.Code art. 2404 (1870), repealed by Act 627 (1978). *See also* Wilcox, *supra*, n.26.